IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MASON CAPITAL L.P.
  and
MASON MANAGEMENT LLC
251 Little Falls Drive
Wilmington, DE 19808

                              Petitioners,

                   v.

REPUBLIC OF KOREA,
Ministry of Foreign Affairs
60, Sajik-ro 8-gil, Jongno-gu,
SEOUL (Postal Code 03172)

Service Address:
National Court Administration
Attn.: Director of International Affairs
Seocho-daero 219
Seocho-gu
SEOUL 06590
Republic of Korea

                              Respondent.

Case No.: 24-cv-1551

**PETITION TO CONFIRM ARBITRAL AWARD**

    Petitioners Mason Capital L.P. ("Mason LP") and Mason Management LLC ("Mason LLC") (Mason LP and Mason LLC are collectively referred to as "Mason"), by and through their counsel, Latham & Watkins LLP, respectfully submit this petition to confirm, recognize, and enforce an arbitral award rendered in their favor and against Respondent, Republic of Korea ("Korea").  In support, Mason hereby allege as follows:

    **1.**    On September 13, 2018, Mason commenced an arbitration proceeding against Korea pursuant to Article 3(1) of the General Assembly Resolution 31/98, United Nations

Commission on International Trade Law, UNCITRAL Arbitration Rules (Dec. 15, 1976) ("UNCITRAL") and Article 11.16 of the Free Trade Agreement between Korea and the United States of America, S. Kor.-U.S., June 30, 2007 ("FTA").[1]

**2.** In the months and years that followed, an arbitration between Mason and Korea ensued. The arbitral proceeding was captioned *Mason Capital L.P. (U.S.A.) and Mason Management LLC (U.S.A.) v. Republic of Korea*, Case No. 2018-55 (Perm. Ct. Arb.) (the "Arbitration").

**3.** More than five years later, on April 11, 2024, a duly constituted arbitral panel (the "Tribunal") issued a *Final Award* ("Final Award"). A certified copy of the Final Award is attached as Exhibit A to the Declaration of Abid R. Qureshi.[2] In the Final Award, the Tribunal determined Korea breached the FTA, damaging Mason's investment in two publicly listed Korean companies. Ex. A, Final Award ¶ 1147(a).

**4.** The Final Award imposed on Korea obligations to pay Mason: (**A**) $32,030,876.83 (USD) in damages for losses, accruing interest at the rate of five (5) percent compounded yearly from July 17, 2015 until April 11, 2024, and then accruing interest at the rate of five (5) percent compounded yearly from April 11, 2024 until the date of full payment; (**B**) €630,000.00 (Euro) in arbitration costs, accruing interest at the rate of five (5) percent compounded yearly from April 11, 2024 until the date of full payment; and (**C**) $10,318,961.78 (USD) in legal fees and expenses, accruing interest at the rate of five (5) percent compounded yearly from April 11, 2024 until the date of full payment. *Id.* ¶ 1147(b)-(f). The amounts listed in this Paragraph 4(A)-(C) are referred to herein as the Final Award Amounts.

---

[1] G.A. Res. 31/98, art. 3, UNCITRAL (Dec. 15, 1976); Decl. of Abid R. Qureshi Ex. B, FTA art. 11.

[2] All Exhibits cited herein are to the concurrently filed Declaration of Abid R. Qureshi.

5.     The Tribunal has not stayed enforcement of the Final Award.  Nevertheless, Korea has failed to pay Mason any portion of the Final Award Amounts.

6.     Pursuant to Article III of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, United Nations Conference on International Arbitration (the "New York Convention"), and its implementing legislation, 9 U.S.C. §§ 201-208, the Final Award is entitled to the same full faith and credit as if it were a final judgment of a court in the United States.

7.     Accordingly, Mason respectfully request this Court (**A**) enter an order confirming, recognizing, and enforcing the Final Award in the same manner as a final judgment issued by a court in the United States; (**B**) enter judgment in favor of Mason and against Korea in accordance with the Final Award Amounts, plus interest through the date of full payment; (**C**) award attorneys' fees and costs of this proceeding; and (**D**) grant such other and further relief the Court deems just and proper.

## THE PARTIES

8.     Mason LP is a limited partnership organized under the laws of the State of Delaware with its registered offices at 251 Little Falls Drive, Wilmington, DE 19808, U.S.A.  Mason LLC is a limited liability company organized under the laws of the State of Delaware with its registered offices at 251 Little Falls Drive, Wilmington, DE 19808, U.S.A.  Mason operate as a global investment firm that provides financing, consulting, and administrative services.  Mason are the Claimants in the underlying Arbitration.

9.     Korea is a "foreign state" as defined in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603.  Korea is the Respondent in the underlying Arbitration.

## JURISDICTION & VENUE

10. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1330(a) and 9 U.S.C. § 203 because the action relates to an arbitration award falling under the New York Convention, implemented at 9 U.S.C. §§ 201-208. Korea is not entitled to immunity under the FSIA, 28 U.S.C. § 1605(a)(6), or under any other applicable law.

11. The Court has personal jurisdiction over Korea pursuant to 28 U.S.C. § 1330(b), which grants personal jurisdiction over a foreign state where subject matter jurisdiction exists pursuant to § 1330(a).

12. Venue is proper in this District under 28 U.S.C. § 1391(f)(4), which provides that a civil action against a foreign state may be brought in the U.S. District Court for the District of Columbia.

## FACTUAL ALLEGATIONS

### A. Korea agreed to arbitrate.

13. The FTA is a treaty entered into between the United States of America and Korea. FTA, Pub. L. No. 112-41, 125 Stat. 428; Ex. B, FTA at 1. Korea signed the FTA on June 30, 2007 and is bound by its terms. Ex. B, FTA at 1.

14. Article 11 of the FTA requires both Korea and the United States to provide certain protections to foreign investors, including the establishment of minimum standards of treatment. Ex. B, FTA arts. 11.3-11.5. That Article further details procedural mechanisms pursuant to which aggrieved private foreign investors may initiate an international arbitration directly against a party government of the country in which their investments were made. *Id.* at art. 11.16.

15. The FTA reflects advance consent by Korea to arbitrate claims filed by private foreign investors pursuant to the procedures detailed in Article 11. The FTA provides that submission of a claim to arbitration by a private party, together with Korea's advance consent,

constitutes an agreement to arbitrate under the terms of the New York Convention. Ex. B, FTA art. 11.17.

**B.     Mason invested in two publicly traded Korean companies that were part of the Samsung Group.**

16.     In 2014, Mason began acquiring shares in Samsung Electronics, Inc. ("SEC"), a publicly traded company in Korea. Ex. A, Final Award ¶¶ 147-54. In 2015, Mason began acquiring shares in another publicly traded Korean company, Samsung C&T Corporation ("SC&T"). *Id.*

17.     Both SEC and SC&T are part of the Samsung group of companies ("Samsung"). *Id.* ¶ 5. Now deceased, Mr. Lee Kun-hee, patriarch of the Lee family, was the Chairman of Samsung. *Id.* ¶ 129.

18.     SC&T was the original enterprise of Samsung at the time of its founding in 1938, and its core businesses were construction and international trading. *Id.* ¶ 128. SEC, the flagship business of Samsung, was established in 1969 and is one of the largest manufacturers of consumer electronics and semiconductors. *Id.* ¶ 130. Mr. Lee Jae-young, (also known as JY Lee), son of Mr. Lee Kun-hee and a member of the Lee family, was the Vice Chairman of SEC. *Id.*

19.     Mason acquired shares in SEC and SC&T, believing that incoming reform to Samsung's corporate governance would unlock value for all Samsung shareholders, including Mason itself. *Id.* ¶ 147.

20.     Korea's National Pension Service ("NPS"), also owned shares in SC&T and SEC, holding a 11.21% and 3.51% stake in each company, respectively. *Id.* ¶ 129. NPS was the largest single investor in SC&T. *Id.* The NPS held these positions as part of its management of over $600 billion in assets, which it managed for the purpose of "promotion of [Korea's] national welfare by providing pension benefits in case of old-age, disability or death." *Id.* ¶ 132.

5

**C.  In 2014, Samsung began exploring a merger with an affiliate on economically disadvantaged terms in order to benefit the Lee family.**

21. In 2014, Samsung began to change its governance structure and the market speculated that it would transition to a holding company structure. *Id.* ¶ 148. This speculation proved true when it was announced in May 2015 that Cheil Industries Incorporated ("Cheil"), formerly known as Samsung Everland, would merge with SC&T (the "Merger"). *Id.* ¶¶ 131, 159.

22. The proposed merger ratio was 1:0.35 with one Cheil share exchanged for 0.35 SC&T shares. *Id.* ¶ 160. Based on this merger ratio, a collection of Korean analysts urged SC&T shareholders to vote against the Merger because it "grossly overvalued Cheil and, correspondingly, severely undervalued SC&T." *Id.* ¶ 164. According to these analysts, the true purpose of the merger was to allow SEC's Vice Chairman, JY Lee, to strengthen his control over Samsung under his family's succession plan while avoiding tax liabilities. *Id.*

23. An independent advisor hired by NPS (Korea Corporate Governance Service) recommended NPS vote against the Merger, reasoning that the Merger (**A**) disadvantaged SC&T shareholders; (**B**) involved a merger ratio which did not reflect the net asset value of SC&T; and (**C**) was proposed for succession planning purposes rather than to achieve genuine business synergies. *Id.* ¶ 171.

**D.  Under pressure from the President of Korea and acting against its economic self-interest, NPS nevertheless voted in favor of the Merger.**

24. Following the announcement of the Merger, Mason purchased 1,589,596 shares in SC&T, with the expectation that NPS would act in its best interests and block the Merger. *Id.* ¶ 155. But, as subsequently revealed during criminal proceedings in Korean courts, the President of Korea, Park Geun-hye, had financial interests in approving the merger. *Id.* ¶ 184-85. President Park ordered officials to "take good care of the NPS voting rights issue regarding the [SC&T/Cheil] merger." *Id.* ¶ 184 (alteration in original). Her subordinates understood this

instruction to mean that "[they] should ensure the accomplishment of the merger." *Id.* (alteration in original). In return, the Vice Chairman of SEC, JY Lee, would provide financial support to a close friend of President Park. *Id.* ¶ 736.

25. The Seoul High Court determined Korean President Park knew the Merger was "the most essential piece" of the Lee family's succession plan and she provided "decisive assistance" to the Merger "immediately prior" to the vote. *Id.* ¶ 185. The Seoul High Court further determined that NPS was instructed "per the President's orders . . . [that it] should handle the voting rights issue with care . . . and should cleverly exercise its voting power and enable the merger to proceed." *Id.* ¶ 186 (second alteration added).

26. Pursuant to this directive, NPS acted against its economic self-interests and voted to approve the merger, costing the national pension an estimated KRWS 138.8 billion (South Korean won) (*id.* ¶ 198) and Mason an estimated $32 million (USD) (*id.* ¶ 1109).

   **E.** **Mason initiated arbitration proceedings against Korea to recover its losses.**

27. In September 2018, Mason commenced the Arbitration against Korea by filing a *Notice of Arbitration and Statement of Claim*, with supporting evidence, pursuant to Article 11.16.3 of the FTA and Article 3(1) of UNCITRAL. Ex. A, Final Award ¶ 9; Ex. C, Decision on Resp't's Prelim. Objs. ¶ 8. Mason alleged Korea breached the FTA in connection with their investments in SEC and SC&T and sought damages and compensation for the breach. Ex. A, Final Award ¶¶ 283-84. Mason appointed Retired Honorable Dame Elizabeth Gloster as the first arbitrator. *Id.* ¶ 10.

28. In October 2018, Korea responded by filing its *Response to Notice of Arbitration and Statement of Claim*. Ex. A, Final Award ¶ 11. Korea agreed to the application of UNCITRAL and appointed Professor Pierre Mayer as the second arbitrator. *Id.*

29. In December 2018 and pursuant to Article 11.19.1 of the FTA, Korea and Mason jointly appointed Professor Dr. Klaus Sachs as the third arbitrator. Ex. A, Final Award ¶ 12. Dame Gloster, Professor Mayer, and Dr. Sachs together constituted the Tribunal. Later in December 2018, Korea and Mason jointly agreed that the Permanent Court of Arbitration would administer the Arbitration. *Id.* ¶ 13. The Arbitration ensued.

F. **Korea was a full and active participant in the Arbitration.**

30. In the months and years that followed, Korea was a full and active participant in the Arbitration. Ex. A, Final Award ¶¶ 11-109. For instance, in January 2019, Korea submitted its *Memorial on Preliminary Objections*, with supporting evidence (together, the "Preliminary Objections"). *Id.* ¶ 24. Korea submitted written materials and briefing in support of its Preliminary Objections, later participating in a hearing where it presented expert witnesses and cross-examined the fact and expert witnesses offered by Mason in connection with the Preliminary Objections. *Id.* ¶¶ 33-37. In January 2020, the Tribunal unanimously issued its *Decision on Respondent's Preliminary Objections* (Exhibit C), in English and Korean, rejecting Korea's arguments and denying Korea's request for dismissal. Ex. A, Final Award ¶ 38. A certified copy of the *Decision on Respondent's Preliminary Objections* is attached as Exhibit C to the Declaration of Abid R. Qureshi.

31. Subsequently, in October 2020, Korea submitted its *Statement of Defense*, with supporting evidence. Ex. A, Final Award ¶ 49. Over the next two years, Korea produced documents, identified evidence, selected witnesses, and made additional submissions in connection with the Arbitration. *Id.* ¶¶ 50-81. In March 2022, the Tribunal convened a hearing in the Arbitration. *Id.* ¶ 82. Korea attended and participated fully, its delegation included party representatives, international lawyers, Korean lawyers, and testifying witnesses. *Id.* During this hearing, both Korea and Mason presented arguments, evidence, and witnesses over the course of

six (6) days. *Id*. Subsequently, both Korea and Mason submitted post-hearing briefs and offered oral closing submissions on particular factual and legal issues. *Id.* ¶¶ 83-91. In February 2024, after Korea attempted to submit additional documents into the record of the proceedings, the Tribunal declared the Arbitration closed. *Id.* ¶¶ 108-09.

### G. The Tribunal issued the Final Award in favor of Mason and against Korea.

32. On April 11, 2024, the Panel issued the Final Award in the Arbitration. Ex. A, Final Award.

33. The Final Award is unanimous, exceptionally detailed, and well-reasoned. It consists of more than three hundred (300) pages, more than eleven hundred (1100) paragraphs, and contains over eighteen hundred (1800) footnotes. *Id.*

34. The Final Award concludes that Korea breached the FTA in connection with the investments by Mason in SEC and SC&T. *Id.* ¶ 1147(a). The Final Award imposed on Korea obligations to pay Mason the Final Award Amounts: **(A)** $32,030,876.83 (USD) in damages for losses, accruing interest at the rate of five (5) percent compounded yearly from July 17, 2015 until April 11, 2024, and then accruing interest at the rate of five (5) percent compounded yearly from April 11, 2024 until the date of full payment; **(B)** €630,000.00 (Euro) in arbitration costs, accruing interest at the rate of five (5) percent compounded yearly from April 11, 2024 until the date of full payment; and **(C)** $10,318,961.78 (USD) in legal fees and expenses, accruing interest at the rate of five (5) percent compounded yearly from April 11, 2024 until the date of full payment. *Id.* ¶ 1147(b)-(f).

35. Despite the Final Award, Korea has failed to pay Mason any portion of the Final Award Amounts.

## CAUSE OF ACTION
### Confirmation of the Final Award

36. Mason re-allege and incorporate by reference preceding paragraphs 1 through 35 as if set forth fully herein.

37. The FTA constitutes an agreement to arbitration under the New York Convention. Ex. B, FTA art. 11.17; 9 U.S.C. § 202 ("An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the [New York] Convention.")

38. Arbitral awards issued pursuant to the FTA fall under the New York Convention and are therefore subject to mandatory confirmation in the courts of the United States. 9 U.S.C. § 207; FTA art. 11.26(10).

39. The Final Award issued on April 11, 2024 is a binding arbitration award in favor of Mason and against Korea. Despite the Final Award, Korea has failed to pay Mason any portion of the Final Award Amounts.

40. Mason have satisfied all the requirements for confirmation outlined in Article IV of the Convention, submission of a "duly authenticated original award" and the "original agreement [to arbitrate]." Moreover, Mason is submitting this Petition within three years of the date of the Final Award. 9 U.S.C. § 207.

41. Accordingly, and pursuant to the Federal Arbitration Act, 9 U.S.C. § 9 and Article III and IV of the New York Convention, implemented by 9 U.S.C. § 201 *et seq.*, Mason is entitled to confirmation of the Final Award. 9 U.S.C. § 207.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioners Mason LP and Mason LLC respectfully request an order:

A. Confirming, recognizing, and enforcing the Final Award pursuant to 9 U.S.C. § 207 and FTA Article 11.26;

B. Entering judgment in favor of Petitioners Mason LP and Mason LLC and against Respondent Korea in accordance with the Final Award Amounts:

1. $32,030,876.83 (USD) in damages for losses, accruing interest at the rate of five (5) percent compounded yearly from July 17, 2015 until April 11, 2024, and then accruing interest at the rate of five (5) percent compounded yearly from April 11, 2024 until the date of full payment;

2. €630,000.00 (Euro) in arbitration costs, accruing interest at the rate of five (5) percent compounded yearly from April 11, 2024 until the date of full payment; and

3. $10,318,961.78 (USD) in legal fees and expenses, accruing interest at the rate of five (5) percent compounded yearly from April 11, 2024 until the date of full payment.

C. Awarding attorneys' fees and costs associated with this proceeding; and

D. Granting such other and further relief as the Court deems just and proper.

\* \* \* \*

Date: May 24, 2024

*/s/ Abid R. Qureshi*

Abid R. Qureshi (D.C. Bar No. 459227)
Joseph V. Langkilde (D.C. Bar No. 90006198)

LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: abid.qureshi@lw.com
Email: j.v.langkilde@lw.com

*Attorneys for Petitioners*