IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MASON CAPITAL L.P.
  and
MASON MANAGEMENT LLC

                             Petitioners,

            v.

REPUBLIC OF KOREA,

                             Respondent.

Case No.: 24-cv-1551

**MEMORANDUM OF LAW IN SUPPORT OF
PETITION TO CONFIRM ARBITRAL AWARD**

## INTRODUCTION

Petitioners Mason Capital L.P. ("Mason LP") and Mason Management LLC ("Mason LLC") (Mason LP and Mason LLC are together referred to as "Mason") respectfully request the Court grant their Petition to Confirm Arbitral Award and issue an order confirming and recognizing an arbitral award against Respondent, the Republic of Korea ("Korea").

The arbitral award (the "Final Award") was issued on April 11, 2024 by a duly constituted three-member panel (the "Tribunal") organized pursuant to the Free Trade Agreement between the Republic of Korea and the United States of America, S. Kor.-U.S., June 30, 2007 (the "FTA") and General Assembly Resolution 31/98, United Nations Commission on International Trade Law Arbitration Rules, UNCITRAL Arbitration (Dec. 15, 1976) ("UNCITRAL").  This Court has jurisdiction to confirm the Final Award against Korea pursuant to Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, United Nations Conference on International Arbitration (June 10, 1958) (the "New York Convention"), implemented in the United States through 9 U.S.C. § 201 *et seq.*  The Court has personal jurisdiction over all parties and venue is proper in Washington, D.C. pursuant to 9 U.S.C. §§ 9 and 204.

All of the prerequisites for confirmation of the Final Award are satisfied.  The Court should grant the Petition to Confirm Arbitral Award.

## I.     FACTUAL BACKGROUND

### A.     Korea agreed to arbitrate.

The FTA is a treaty entered into between the United States of America and the Republic of Korea.  Pub. L. No. 112-41, 125 Stat. 428; Pet. ¶ 13; Decl. of Abid R. Qureshi Ex. B, FTA at

1.[1][2]  Korea signed the FTA on June 30, 2007 and is bound by its terms.  Ex. B, FTA at 1.

Article 11 of the FTA requires both Korea and the United States to provide certain protections to foreign investors, including the establishment of minimum standards of treatment. Ex. B, FTA arts. 11.3-11.5; Pet. ¶ 14.  That Article further details procedural mechanisms pursuant to which aggrieved private foreign investors may initiate an international arbitration directly against a party government of the country in which their investments were made.  Ex. B, FTA art. 11.16.  The FTA reflects advance consent by Korea to arbitrate claims filed by private foreign investors pursuant to the procedures detailed in Article 11.  The FTA provides that submission of a claim to arbitration by a private party, together with Korea's advance consent, constitutes an agreement to arbitrate under the terms of the New York Convention:

> 1. Each Party consents to the submission of a claim to arbitration under this Section in accordance with this Agreement.
>
> 2. The consent under paragraph 1 and the submission of a claim to arbitration under this Section shall satisfy the requirements of:
>
>    a. Chapter II (Jurisdiction of the Centre) of the ICSID Convention and the ICSID Additional Facility Rules for written consent of the parties to the dispute; and
>
>    b. Article II of the New York Convention for an "agreement in writing."

Ex. B, FTA art. 11.17.

---

[1] All Exhibits cited herein are attached to the concurrently filed Declaration of Abid R. Qureshi.

[2] Petitioners attach Chapter 11 of the FTA to the Declaration of Abid R. Qureshi and request this Court take judicial notice of the entire Agreement, as incorporated by reference, as a publicly available treaty.  *Volovets v. Clinton*, No. 22-699, 2022 WL 3026630, at *1 & n.1 (D.D.C. 2022) (taking notice of publicly available treaty referenced in complaint), *aff'd on other grounds*, No. 22-5207, 2022 WL 5239553 (D.C. Cir. 2022).  The treaty is publicly accessible in English (https://www.ustr.gov/trade-agreements/free-trade-agreements/korus-fta/final-text) and in Korean (https://www.fta.go.kr/us/doc/1/).

### B. Korea participated fully in the arbitration—and lost.

Korea evidenced its agreement to arbitration through its full participation in the arbitral proceeding commenced by Mason. More than five years ago, in September 2018, Mason initiated arbitration against Korea arising out of their investments in Samsung C&T Corporation ("SC&T") and Samsung Electronics ("SEC"), two publicly listed Korean companies. Pet. ¶¶ 21, 27. Mason alleged Korea had improperly and illegally manipulated the SC&T shareholder vote to approve a merger on terms that were economically damaging to SC&T shareholders like Mason. *Id*. ¶ 27. Mason claimed Korea's conduct violated the FTA. *Id*. Seeking compensation for these injuries, Mason commenced arbitration against Korea pursuant to Article 11.16 of the FTA. *Id*.

Korea participated fully in the arbitration. Pet. ¶ 30. For example, Korea agreed that UNCITRAL would apply. *Id*. ¶ 28. Korea also appointed one of the three arbitrators to the Tribunal, and jointly agreed to the appointment of another. *Id*. ¶¶ 28-29. Korea agreed that the Permanent Court of Arbitration would administer the arbitration. *Id*. ¶ 29. During the more than five years of arbitral proceedings, Korea produced documents, identified evidence, selected witnesses, presented testimony, and made both legal and factual arguments in opposition to the claims asserted by Mason. *Id*. ¶ 31.

Korea mounted vigorous defenses throughout the arbitration. *Id*. ¶¶ 30-31. For instance, in January 2019, Korea submitted a *Memorial on Preliminary Objections*, with supporting evidence, to the Tribunal. *Id*. ¶ 30. In its *Preliminary Objections*, Korea challenged jurisdiction and the legal sufficiency of the claims asserted by Mason. Ex. C ¶ 6. Nine months later, in October 2019, the Tribunal convened a hearing on these preliminary objections. *Id*. ¶ 32. Korea participated fully. Both fact and expert witnesses testified. Pet. ¶ 30. In 2020, the Tribunal issued to the parties, in English and Korean, its *Decision on Respondent's Preliminary Objections*. *Id*. This unanimous decision rejected all the preliminary challenges asserted by Korea. *Id*.

3

The arbitration progressed and Korea continued to participate fully. In March 2022, after the parties made extensive written submissions, the Tribunal convened a hearing. Pet. ¶ 31. Korea attended and participated fully, its delegation included party representatives, international lawyers, Korean lawyers, and testifying witnesses. *Id*. Subsequently, the Tribunal invited post-hearing briefing and presentation of oral closing submissions. *Id*. Again, Korea participated fully in these proceedings. After these extensive proceedings, on April 11, 2024, the Tribunal issued its unanimous Final Award. *Id*. ¶ 32.

Korea lost and Mason prevailed in the arbitration. *Id*. The Final Award is painstakingly detailed, spanning more than three hundred (300) pages, consisting of over eleven hundred (1100) paragraphs, and containing more than eighteen hundred (1800) footnotes. *Id*. ¶ 33. In its Final Award, the Tribunal unanimously determined Korea breached the FTA in connection with Mason's investments. *Id*. ¶¶ 33-34. The Final Award imposed pecuniary obligations on Korea for its breach of the FTA, requiring it to pay Mason the following amounts (collectively, referred to as the "Final Award Amounts"):

| |
|---|
| **$32,030,876.83** (USD) in damages for losses, accruing interest at the rate of five (5) percent compounded yearly from July 17, 2015 until April 11, 2024, and then accruing interest at the rate of five (5) percent compounded yearly from April 11, 2024 until the date of full payment; |
| **€630,000.00** (Euro) in arbitration costs, accruing interest at the rate of five (5) percent compounded yearly from April 11, 2024 until the date of full payment; and |
| **$10,318,961.78** (USD) in legal fees and expenses, accruing interest at the rate of five (5) percent compounded yearly from April 11, 2024 until the date of full payment. |

*Id*. ¶ 34.[3] Korea has not challenged the Final Award. But it has not paid any portion of the Final Award Amounts. Confirmation of the Final Award is now appropriate.

---

[3] By way of illustration, the amounts awarded to Mason under the Final Award continue to accrue and would amount to over $64 million if Korea paid the award by September 30, 2025.

4

### III. ARGUMENT

Korea is bound by the Final Award and is liable to Mason for the Final Award Amounts. The New York Convention and FAA require confirmation of the Final Award.

#### A. Confirmation of the Final Award is required.

The Final Award, rendered in a proceeding commenced pursuant to the FTA, constitutes an arbitration subject to the New York Convention. 9 U.S.C. § 202 ("An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the [New York] Convention."); Ex. B, FTA art. 11.26(10) ("A disputing party may seek enforcement of an arbitration award under […] the New York Convention"). Accordingly, Mason seeks confirmation of an arbitral award pursuant to Articles III and IV of the New York Convention, implemented into United States law at 9 U.S.C. § 201 *et seq*. Article III of the New York Convention explains, in pertinent part:

> Each contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles.

The United States operationalizes this provision of the New York Convention, as follows:

> Within three years after an arbitral award falling under the [New York] Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The Court *shall confirm* the award unless it finds any of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said [New York Convention].

9 U.S.C. § 207 (emphasis added).

Article IV of the New York Convention specifies the procedure for confirmation, requiring the submission of a "duly authenticated original award" and the "original agreement [to arbitrate]." Mason satisfied both requirements, submitting the Final Award and FTA to the Court, together

5

with their Petition.  Moreover, Mason submitted its Petition within three years of the date of the Final Award.  9 U.S.C. § 207.  Without basis to resist the mandate of the Final Award, Korea cannot credibly oppose conformation.

**B.     Korea cannot credibly identify any grounds to resist confirmation.**

Pursuant to the FAA, courts are "required to confirm" an arbitral award unless the party opposing confirmation can demonstrate that the award fits into the "narrow circumstances when a court may deny confirmation of an arbitral award." *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011) (discussing 9 U.S.C. § 207) (citation omitted).

These narrow circumstances are defined in Article V of the New York Convention: (**a**) incapacity of the parties or some other invalidity of the underlying agreement; (**b**) deficient notice of the arbitration proceedings; (**c**) an award beyond the scope of the arbitration agreement; (**d**) improper composition of the arbitration panel; or (**e**) an award that has not yet become binding, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.  New York Convention, art. V(1); *In re Arb. of Certain Controversies Between Getma Int'l and Republic of Guinea*, 142 F. Supp. 3d 110, 113 (D.D.C. 2015) (citing New York Convention, art. V(1)).  In addition, a state may refuse to recognize an award when the subject matter is not capable of settlement by arbitration or if recognition of the award would be contrary to public policy.  New York Convention, art. V(2).

None of these narrow exceptions applies here.  **First**, the arbitration took place pursuant to a valid, executed agreement, the FTA.  Moreover, Korea consented to application of UNCITRAL to the proceeding, Petition ¶ 28, refuting any suggestion that the agreement underlying the arbitration was invalid.  *See, e.g.*, *Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 67 (D.D.C. 2013) ("[I]n the context of a bilateral investment treaty, 'incorporation of the UNCITRAL

6

Rules provides clear and unmistakable evidence that the parties intended for the arbitrator to decide questions of arbitrability.'" (citation omitted)), *aff'd*, 795 F.3d 200 (D.C. Cir. 2015).  **Second**, Korea had sufficient notice of the proceedings, as evidenced by its full and active participation in the arbitration from commencement to final disposition.  Pet. ¶¶ 27-32.  Such efforts are inconsistent with a conclusion that notice was deficient in any respects.  *See, e.g.*, *Stati v. Republic of Kaz*, 302 F. Supp. 3d 187, 207 (D.D.C. 2018), *aff'd*, 773 F. App'x 627 (D.C. Cir. 2019) (per curiam).  **Third**, the Final Award clearly encompassed issues at the heart of the FTA:  investments by Mason into two publicly listed Korean companies.  **Fourth**, Korea was integral to the selection of members of the Tribunal, choosing one unilaterally and another jointly.  Pet. ¶¶ 28-29.  **Fifth**, the Final Award was issued on April 11, 2024 and became effective on that day.

    The substantive matter at the heart of the arbitration proceeding—investments in publicly listed Korean companies—is clearly "capable of settlement by arbitration," (New York Convention, art. V(1)) indeed an entire chapter of the FTA is devoted to this subject (*BCB Holdings Ltd. v. Gov't of Belize*, 110 F. Supp. 3d 233, 249 (D.D.C. 2015), *aff'd*, 650 F. App'x 17 (D.C. Cir. 2016), *granting enforcement* 232 F. Supp. 3d 28 (D.D.C. 2017)).  Finally, confirmation of the award is entirely consistent with, and not contrary to, the public policy of the United States.  *Id.* at 250 (declining to apply the New York Convention's public policy exception, which "is construed extremely narrowly and applied 'only where enforcement would violate the forum state's most basic notions of morality and justice.'" (citation omitted)), *aff'd*, 650 F. App'x 17 (D.C. Cir. 2016), *granting enforcement* 232 F. Supp. 3d 28 (D.D.C. 2017).  In fact, confirmation would advance United States public policy where "[t]he underlying goal of the FAA is to encourage parties to submit freely to a neutral arbitration process." *Armco Steel Co. v. CSX Corp.*, 790 F. Supp. 311, 319 (D.D.C. 1991).

7

Korea is thus unable to meet the "high" burden "required to avoid summary confirmation" of the Final Award.  *Int'l Trading*, 763 F. Supp. 2d at 20 (citation omitted).  Confirmation of the Final Award is appropriate.

### IV. CONCLUSION

For the reasons stated herein, Mason respectfully request the Court grant their Petition and confirm the Final Award.

Respectfully submitted,

*/s/ Abid R. Qureshi*

May 24, 2024

Abid R. Qureshi (D.C. Bar No. 459227)
Joseph V. Langkilde (D.C. Bar No. 90006198)

LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: abid.qureshi@lw.com
Email: j.v.langkilde@lw.com

8